IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICAELA "MICHELLE" ADAMES,     §
                              §
         Plaintiff,           §
                              §
V.                            §          No. 3:20-cv-1002-BN
                              §
NUEHEALTH MANAGEMENT          §
SERVICES, LLC f/k/a NUETERRA  §
HEALTHCARE MANAGEMENT, LLC    §
d/b/a NUEHEALTH and           §
METDALSPI, LLC d/b/a METHODIST §
HOSPITAL FOR SURGERY,         §
                              §
         Defendants.          §

**MEMORANDUM OPINION AND ORDER**

Defendants Nuehealth Management Services and Metdalspi, LLC have filed a motion for summary judgment. *See* Dkt. No. 43. Plaintiff Micaela "Michelle" Adames filed a response, *see* Dkt. No. 48, and Defendants filed a reply, *see* Dkt. No. 52.

Defendants seek summary judgment on Adames's claims for retaliation under Title VII. They argue that Adames failed to make the required prima facie case of retaliation and that she failed to rebut their evidence showing a nonretaliatory reason for her termination.

Adames also filed objections to Defendants' evidence. *See* Dkt. No. 51. Adames requests the Court strike inadmissible evidence on which Defendants rely in their motion. *See id.* Defendants did not respond to Adames's objections.

-1-

Because Defendants offered nonretaliatory reasons for termination, and Adames failed to show those reasons were pretext for retaliation, the Court grants Defendants' motion.

## Background

This is a Title VII retaliation case that Adames filed after Defendants terminated her employment in December 2016.

Adames worked as a surgical scrub nurse at Methodist Hospital for Surgery in Addison, Texas beginning in September 2013. Adames reported directly to the Operating Room Supervisor, Sherry Turner. Methodist Hospital's Perioperative Director was Deborah Pearcy, and the onsite human resources manager was Erik Leopard.

During Adames's employment, Neuterra Healthcare Management LLC professionally managed Methodist Hospital, including its human resources support and services. Daphne Hawman was Nueterra's Regional Human Resources Manager for the Texas market, which includes Methodist Hospital.

Shortly after starting with Methodist Hospital, Adames received a verbal warning for failing to receive certification within 90 days of her start date. *See* Dkt. No. 45 at 44-45. Then, on January 14, 2014, Adames received a verbal warning for performance, conduct, and behavior issues. *See id.* at 203-04. And, on October 15, 2014, Adames received a final written warning for an inappropriate post on social media. *See id.* at 205.

-2-

In early December 2015, a Methodist Hospital employee reported to Pearcy and Leopard that a male coworker sexually harassed her. *See id.* at 216-17.

As part of the investigation into the allegation, Pearcy and Leopard interviewed both the accuser and the accused, as well as Adames and four other employees during the week of December 6, 2015. *See id.* at 27. During her interview, Adames reported that the accused had made lewd sexual advances to her and corroborated the accuser's allegations. *See id.* at 24-25.

At the conclusion of their investigation, Pearcy and Leopard issued the accused a final written warning for the inappropriate behavior that he admitted to, including tickling the accused, making lewd sexual remarks, and sending inappropriate text messages during work. *See id.* at 303. Pearcy and Leopard "could not confirm or deny" the other allegations, including those that Adames made. *See id.* at 214.

They also issued the accuser a written warning. Leopard and Pearcy found that the photographs, text messages, and witness statements that they uncovered showed mutual flirtation between the coworkers and that the accuser had lied during their investigation about flirting and sending social media messages during work. *See id.* at 215. After Pearcy and Leopard presented the accuser the written warning, the accuser resigned. The accuser then attempted to rescind her resignation, but Pearcy and Leopard declined and accepted her resignation. *See id.* at 138-39.

 On December 30, 2015, after receiving a complaint from another coworker, Leopard issued Adames a written warning for violation of the anti-harassment and code of conduct policies. *See id.* at 217-21. The coworker alleged that Adames was

-3-

cursing, spreading gossip, causing disruption, and intimidating other employees. *See id.* at 220. Adames denied the allegations and refused to sign the corrective action notice. *See id.*

The next day, Adames emailed Turner and Pearcy to contest the written warning. *See* Dkt. No. 50 at 246-47. In the email, Adames raised additional allegations of sexual harassment against the employee previously accused of sexual harassment. *See id.* Adames also stated that she felt "there is support for [the accused employee] inside the facility" and that she was "afraid of being targeted and eventually fired" for taking part in the sexual harassment investigation. *Id.* at 247.

On December 16, 2015, the original accuser filed an EEOC charge for discrimination and retaliation against Methodist Hospital. *See id.* at 251. On April 13, 2016, the parties resolved the claim during a mediation that Leopard attended. *See id.* at 194-95.

On June 8, 2016, Adames received a written warning for violation of the anti-harassment and code of conduct policies. *See id.* at 140-41. This warning stemmed from an altercation between Adames and another nurse in an operating room that Adames was preparing for surgery. *See id.* at 139. After the other nurse entered the operating room and cursed at Adames, the argument moved to the hallway, and Adames "broke scrub" by leaving the operating room. *See id.* at 10. Witnesses whom Pearcy interviewed said that both Adames and the other nurse shouted at each before being separated. *See id.* at 140.

After an investigation, Defendants determined that, although the other nurse instigated the fight, both her and Adames were at fault. *See* Dkt. No. 45 at 226-29. The nurse that started the altercation received a verbal warning. *See id.* at 226; *see also* Dkt. No. 44 at 13 n.62.

After meeting with Pearcy and Leopard, Adames refused to sign the June 8 corrective action notice. *See* Dkt. No. 50 at 141. She told Pearcy and Leopard that she planned to resign, but Pearcy and Leopard told Adames they felt she was "useful to the department" and convinced her to stay. Dkt. No. 45 at 91. Because of this write-up, Adames was ineligible for a bonus. *See id.* at 38-39.

On July 5, 2016, Adames emailed Pearcy and Leopard requesting an appeal of the June 8, 2016 writeup. *See* Dkt. No. 50 at 145-46. Adames stated she felt "targeted due to [her] involvement" in the sexual harassment investigation and that she was "afraid to report anything" for fear of being reprimanded. *Id.* After she received no response, Adames sent another email on July 25, 2016 and forwarded her original email to Methodist Hospital President Dan Gideon. *See id.* at 147.

Leopard responded the next day, stating that he and Pearcy would "uphold [Adames's] disciplinary action based on the testimony of employees [that they] interviewed." *Id.* at 149. Gideon responded as well, stating that he would refer the incident to Hawman at Nueterra. *See id.* at 152.

On August 2, 2016, Adames sent an email to Gideon, Pearcy, and Leopard. *See id.* at 155. Adames stated that she did not feel comfortable reporting "anything as it

stands now" and that it "crossed her mind" that the "ridiculous write ups" were in "retaliation for addressing the sexual harassment." *Id.*

As promised, Gideon referred the June 8, 2016 incident to Neuterra, and Hawman conducted another investigation. On August 24, 2016, after interviewing witnesses and reviewing Adames's work history, Hawman issued a written summary of her findings. *See id.* at 220. Hawman noted that "the witnesses felt that the two [employees] were participating parties and did not feel Michelle was trying to walk away from the situation as she stated." Dkt. No. 45 at 290. Hawman recommended that the write-up should stand "due to the pattern of behavior for Michelle." *Id.*

On November 22, 2016, Adames received a final written warning for violation of the anti-harassment and code of conduct policies. This write-up was a result of a formal complaint that another employee made against Adames. *See id.* at 256-57. The employee reported that, on several occasions, Adames "talked down to him" and "caused disruption within his department," *id.* at 259, and that "[h]er attitude was rude and unprofessional," *id.* at 256.

Pearcy and Leopard held a meeting with Adames, during which she stated that "she was joking around" and that the incidents were "completely a misunderstanding." *Id.* at 259. But, after the reporting employee joined the meeting, he explained to Adames that "he interpreted the incident as a confrontation, not a joke." *Id.*

On the same day that she received this final written warning, Adames emailed Leopard and Pearcy. Adames stated she felt the write-ups were "uncalled for" and

"absurd," that she felt "targeted and terrified of losing her job," and that she was "just going to continue getting written up for no reason." Dkt. No. 50 at 163.

On December 22, 2016, Adames received a corrective action notice that resulted in termination. This notice stemmed from an allegation that Adames came into an operating room in plain clothes and said to another employee, "What the fuck are you looking at?" Dkt. No. 45 at 266. Pearcy and Turner investigated the complaint and concluded that the allegation was credible. *See id.* Adames denies these allegations. *See id.* at 267; *see also* Dkt. No. 50 at 12.

As a result of this corrective action notice, Pearcy and Leopard decided to request termination of Adames and sent the request to Dan Gideon and Nueterra. *See* Dkt. No. 45 at 265-67.

Hawman then reviewed the request for termination. *See id.* at 268. At the request of Adames, Hawman investigated both the November 21, 2016 write-up and the December 22, 2016 write-up, interviewing witnesses for both events. *See id.* Based on her investigation, and considering Adames's history of violations, Hawman concluded that termination was appropriate. *See id.*

Both before and after Hawman concluded her investigation, Adames sent Hawman emails concerning the details of the incidents and raising complaints about her treatment. *See id.* at 270-74.

On December 29, 2016, Adames submitted her resignation in lieu of termination. *See id.* at 288.

Later that day, and again on January 30, 2017, Hawman sent Adames letters addressing Adames's concerns. *See id.* at 285-88. Hawman concluded that Adames's complaints were unsubstantiated and did not change her conclusion that termination was appropriate. *See id.* at 288.

On April 22, 2020, Adames filed this lawsuit, alleging a single cause of action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* *See* Dkt. No. 1.

And, on June 28, 2021, Defendants filed the present motion. *See* Dkt. No. 43.

Defendants contend that Adames's retaliation claim fails because she cannot show the required causal link between her participation in the sexual harassment investigation and her termination. *See* Dkt. No. 44 at 22-29. And Defendants contend that they had legitimate, non-retaliatory reasons for terminating Adames. *See id.* at 29-31.

Adames argues that summary judgment is not appropriate because she has made a prima facie case of retaliation and shown that Defendants' reasons for termination are pretextual. *See* Dkt. No. 49.

### Legal Standards and Analysis

### I.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc.*

*v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*

*v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## II.    *McDonnell Douglas* Analysis

When proving a retaliation claim under Title VII without direct evidence, as Adames attempts here, a plaintiff must rely on circumstantial evidence under the evidentiary framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff must first establish a prima facie case of retaliation. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016). "In the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

### A.    Prima facie case

#### 1.    Protected activity

Defendants acknowledge that Adames's participation in the 2015 sexual harassment investigation constitutes protected activity. *See* Dkt. No. 44 at 22.

Adames contends that, in addition to her involvement in the investigation, each of the emails that allege retaliation for reporting sexual harassment sent to Pearcy, Leopard, and Hawman constitute protected activity. *See* Dkt. No. 49 at 21.

"An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e–3(a)). Because Adames's emails include complaints of retaliation for participating in the sexual harassment investigation, which would constitute opposition to an unlawful practice, those emails constitute protected activity.

### 2.   Adverse employment action

Defendants do not contest that Adames's resignation in lieu of termination is an adverse employment decision. *See* Dkt. No. 44 at 22.

And, as Defendants acknowledge, the June 8, 2016 written warning caused Adames to lose a bonus and is also a materially adverse action. *See id.* at 24. "In order to constitute an adverse employment action for the purposes of a prima facie case of retaliation, there must be a 'materially adverse' action that is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Porter*, 810 F.3d at 945). "To determine whether an action is materially adverse," courts "look to indicia such as whether the action affected 'job title, grade, hours, [or] salary.'" *Id.* (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

"[A] formal reprimand may be materially adverse when 'it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions.'" *Garrett v. City of Tupelo, Mississippi*, No. 1:16-cv-197-DMB-DAS, 2018 WL 3341198, at *10 (N.D. Miss. July 6, 2018) (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011)). The June 8, 2015 written warning made Adames ineligible for a bonus, making it "unquestionably materially adverse." *Risinger v. BASF, Inc.*, No. 1:06-cv-586, 2007 WL 9725084, at *10 (E.D. Tex. Sept. 24, 2007).

### 3.    Causation

Defendants argue that Adames failed to show the required causal connection between the protected activity and the adverse employment actions. Defendants contend that, although the adverse employment actions happened after her protected activity, the events are too far apart to indicate a casual connection. *See* Dkt. No. 44 at 22-23.

"In this Circuit, temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter*, 810 F.3d at 948. "Such temporal proximity must generally be 'very close.'" *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001)). A "two-and-one-half-month period … fits comfortably within the time periods" found to be sufficiently close, *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019), "while a five month lapse is not close enough without other evidence of retaliation," *Feist*, 730 F.3d at 454.

On November 22, 2016, Adames complained to Pearcy and Leopard that she felt "targeted" after receiving multiple write-ups following her involvement in the sexual harassment investigation. Dkt. No. 50 at 163. One month later, Defendants fired Adames. This four-week gap between complaints of retaliation and her termination "is sufficient to satisfy the prima facie case of causation." *Porter*, 810 F.3d at 949 (finding six-and-a-half-week timeframe sufficient).

And, "when it comes to timing," the United States Court of Appeals for the Fifth Circuit has "recognized that the prima facie case does not rigidly consider only one form of temporal connection." *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017). For example, in *Starnes*, the Fifth Circuit found that a plaintiff's termination that occurred "just ten days after [the defendant] paid $40,000 to resolve the problem [the plaintiff] raised" indicated a causal connection, despite the termination occurring over a year after the protected activity. *Id.*

Similarly, here, eight weeks after Defendants mediated and resolved the sexual harassment claim that Adames corroborated, Adames received the June 8, 2016 written warning that made her ineligible for her bonus. *See* Dkt. No. 49 at 10. Because "[t]he time when funds have gone out the door may be when the retaliatory impulse is strongest," *Starnes*, 849 F.3d at 635, the proximity between the mediated settlement and the written warning indicates a causal connection, *see Garcia*, 938 F.3d at 243 (finding two-and-one-half-month period sufficiently close to satisfy causation).

The adverse employment actions in June and December of 2016, which followed shortly after events from which retaliation may be inferred, are sufficient to satisfy causation at the prima facie stage.

## B.      Legitimate, non-retaliatory reason for write-up and termination

Since Adames established a prima facie case, the burden shifts to Defendants "to articulate – but not prove – a legitimate, nondiscriminatory reason for its employment decision." *Sellers v. BNSF Ry. Co.*, No. 1:11-CV-190, 2013 WL 1181458, at *9 (E.D. Tex. Mar. 18, 2013). "An employer produces a legitimate, non-retaliatory reason for the purposes of the second stage of the *McDonnell Douglas* when it articulates that an employee was terminated for violation of a company policy." *Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 509 (W.D. Tex. 2016).

The summary judgment evidence shows legitimate, non-retaliatory reasons for the adverse employment actions. Regarding the June 8, 2016 write-up, Pearcy and Leopard's initial investigation uncovered that Adames violated Methodist Hospital's anti-harassment and code of conduct policies. *See* Dkt. No. 45 at 226. And Hawman agreed on appeal, finding that Adames was a "participating party" and was not "trying to walk away from the situation as she stated." Dkt. No. 50 at 231.

In the report requesting termination, Defendants noted the four corrective action notices issued to Adames after December 2015. *See* Dkt. No. 45 at 298-300. Each of the four notices cited infractions of Methodist Hospital's code of conduct and anti-harassment policies. *See id.* at 220, 226, 259, 266. And, after her independent review, Hawman noted that

> Ms. Adames has received multiple [c]orrective counselings
> … related to her conduct and behavior.
>
> Since 12/15, Ms. Adames has been provided corrective
> action and counseling intended to remind her of acceptable
> conduct. However, Ms. Adames has not demonstrated
> accountability for her conduct during any of her
> counselings and has continued with her pattern of
> unacceptable behavior.

*Id.* at 168.

By pointing to a series of policy violations, and a failure to correct her behavior,

Defendants have articulated a legitimate, non-retaliatory reason for firing Adames.

### C.     Pretext

The final burden moves to Adames to rebut Defendants' reason for termination

by showing it is "actually a pretext for retaliation." *LeMaire v. Louisiana,* 480 F.3d

383, 388-89 (5th Cir. 2007). To meet this burden, Adames must show there are

material issues of fact as to whether her engaging in protected activity "was a but-for

cause" of the adverse employment actions. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570

U.S. 338, 362 (2013).

While temporal proximity alone is enough to meet the "much less stringent"

prima facie causation standard, *Starnes*, 849 F.3d 635, Adames must also offer "other

significant evidence of pretext" at this stage "to survive summary judgment," *Garcia*,

938 F.3d at 243. And "proof that an employer's decision was pretextual cannot

withstand summary judgment when … a plaintiff creates 'only a weak issue of fact

as to whether the employer's reason was untrue, and there was abundant and

uncontroverted evidence that no discrimination occurred.'" *Guadalajara*, 224 F. Supp. 3d at 510 (quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

In addition to the temporal proximity as evidence of pretext, Adames points to her work history before the protected activity, Defendants' "failure to perform adequate investigations," "the disparate treatment Adames received compared to employees with similar infractions," and "evidence [that] Defendants previously engaged in similar retaliation." Dkt. No. 49 at 22-29.

After reviewing all the evidence in the light most favorable to Adames, the Court concludes that Adames fails to meet her burden to show Defendants' reason for termination was pretext.

First, Adames has failed to show that any of the final decision makers exhibited retaliatory animus. For each of the adverse employment actions, including the June 8, 2016 written warning, Pearcy and Leopard investigated the incidents and prepared the corrective action notices, and Hawman investigated and made an independent recommendation. And, after Adames's final write-up, Hawman recommended termination. But Adames contends that only Pearcy and Leopard retaliated against her. *See* Dkt. No. 49 at 25. Without alleging that Hawman harbored a retaliatory motive for her decision, Adames cannot show that Hawman would not have made the same recommendation to fire her had she not participated in the protected activity.

To overcome this, Adames argues that Pearcy's and Leopard's alleged animus can be attributed to Hawman under the "cat's paw" theory. "To establish causation

under a cat's paw theory," a plaintiff "must produce sufficient evidence that (1) [another employee], motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause" of an adverse employment action. *Zamora v. City Of Houston*, 798 F.3d 326, 333 (5th Cir. 2015). If those conditions are met, "the causal link between the protected activity and adverse employment action remains intact." *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).

Adames fails to identify any direct or circumstantial evidence from which a finder of fact could infer Pearcy and Leopard intended to get Adames fired in retaliation for her protected activity. Neither Pearcy nor Leopard initiated any of the investigations that led to any of the write-ups; indeed, other employees or Adames herself reported all the incidents. And, as discussed below, Adames fails to show that either Pearcy or Leopard treated Adames differently than similarly situated employees. "[M]ere speculation that [Leopard and Pearcy] acted with a retaliatory motive" in issuing written warnings to Adames "is insufficient to show a causal link." *Gollas v. Univ. Of Texas Health Sci. Ctr. At Houston*, 425 F. App'x 318, 326 (5th Cir. 2011).

Further, both Pearcy and Leopard supported Adames and convinced her not to resign after Adames participated in the investigation and complained of retaliation. *See* Dkt. No. 45 at 226-27. When "the same actor takes a positive employment action towards an employee after that employee engages in protected activity, any inference of retaliation dissipates." *Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 784 (M.D. La. 2004); *see also Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir.

1997) (holding that plaintiff's retaliation case suffered from "critical flaws" where two of four decision-makers recommended plaintiff's promotion after she engaged in protected activity).

And Adames cannot show that any action that Pearcy and Leopard took was a but-for cause of Hawman's decisions. Hawman conducted independent investigations, including interviews of the witnesses. And, while Adames complains that the investigation into the December 2016 incident was flawed and that Hawman relied only on Pearcy's findings to make her decision, *see* Dkt. No. 49 at 26, Hawman's final recommendation to terminate shows otherwise. In addition to the December 2016 incident, Hawman pointed to Adames's history of infractions and failure to accept responsibility and improve. *See* Dkt. No. 45 at 168. So, Adames has failed to show that Hawman would not have recommended termination but for Pearcy's findings. And, even if the investigation was "'imperfect, incomplete, or arrived at a possibly incorrect conclusion,' [that] does not, by itself, show pretext." *Guadalajara*, 224 F. Supp. 3d at 510.

Second, Adames's work history does not support a finding of pretext. When an employee has a positive employment record before engaging in protected activity only to be disciplined or terminated shortly after, such circumstantial evidence can suggest retaliation. *See Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010).

Adames received three corrective action notices before she participated in the protected activity. And, like the post-December 2015 write-ups leading to her termination, the January 14, 2014 warning focused on behavior issues. *See* Dkt. No.

45 at 203-04. Specific examples included other employees reporting that Adames had a "sarcastic attitude," that surgeons reported Adames would "talk back to them," and that staff reported that Adames was "always on the defense and completely unable to accept constructive criticism from others." *Id.* at 203. "Attitude was the common theme" of these concerns, *id.* at 203-04, which is consistent with the "unacceptable pattern of behavior" that Hawman cited as a reason for termination, *see id.* at 268.

Because Adames's conduct policy violations predated her protected activity, Adames's work history does not support any inference of pretext.

Third, Adames fails to show that Leopard and Pearcy treated her differently than other similarly situated employees. To show that Defendants treated another employee more favorably, Adames must show the employee being compared "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). "Critically, … the conduct the employer points to as the reason for the firing must have been 'nearly identical' to 'that of the proffered comparator who allegedly drew dissimilar employment decisions.'" *Garcia*, 938 F.3d at 244 (quoting *Lee*, 574 F.3d at 260).

Adames points to two coworkers as possible comparators. Adames argues that the male employee accused of sexual harassment received more favorable treatment because he was only written up for the conduct to which he admitted. *See* Dkt. No. 49 at 27. But Adames fails to show that the allegations against that employee were

similar, or even close to "nearly identical," to the reasons for which she was written up and fired. *Garcia*, 938 F.3d at 244

Adames also argues that the coworker who instigated the June 8, 2016 altercation was not written up for rude behavior several weeks before. *See* Dkt. No. 49 at 27-28. While this behavior is comparable to the incidents that led to Adames's write-ups and termination, Adames fails to show that "this particular employee" had a similarly "extensive disciplinary history." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007). And, as Defendants note, Adames was alleged to have violated conduct policies on several occasions but was not written up. *See* Dkt. No. 44 at 5 (noting, for example, report that Adames purposefully pushed stand into coworker yet went unpunished). "Simply put, none of the examples involve a similarly situated employee who received less severe treatment than [Adames] did." *Strong*, 482 F.3d at 807.

Finally, the alleged retaliation against Adames's coworker does not create a triable issue. Adames contends that Defendants retaliated against the coworker who reported being sexually harassed in December 2015. *See* Dkt. No. 49 at 28. But those retaliation allegations were never substantiated. And two other employees who, like Adames, participated in the investigation continue to work at Methodist Hospital and have had no disciplinary actions against them. *See* Dkt. No. 45 at 196. The facts surrounding the allegations and the accuser's treatment may be relevant and admissible, but it is not enough to create a triable issue as to whether Defendants' reasons for terminating Adames were pretext.

The only evidence that Adames is left with is her own allegations of retaliation. All these allegations were made after reprimands for workplace conduct and were based on Adames's own beliefs. But "subjective belief alone is not enough to establish causation between the protected activity and the adverse employment action." *Jones v. CVS Pharmacy, Inc.*, No. 3:07-cv-1383-L, 2009 WL 1904842, at *7 (N.D. Tex. July 2, 2009); *see also Travis v. Bd. of Regents of the Univ. of Texas Sys.*, 122 F.3d 259, 266 (5th Cir. 1997) ("Without evidence, plaintiff's assertion that retaliation caused the termination … is merely her own subjective belief, which is insufficient to create a jury question."). The Fifth Circuit has explained that

> [e]mployers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. This is especially true for hospitals providing serious medical care to patients. Precedent does not prevent a hospital from removing such an employee simply because the employee engaged in a protected work activity months prior.

*Strong*, 482 F.3d at 808.

Because Defendants stated a legitimate, non-retaliatory reason for firing Adames, and Adames has not put forth sufficient evidence to show that the reason was pretext, Adames's retaliation claim must fail.

And, because the Court did not consider the evidence to which Adames objected in making its decision, the Court need not consider her request to strike. *See* Dkt. No. 51.

## Conclusion

For the reasons stated, the Court GRANTS Defendants' Motion for Summary Judgment [Dkt. No. 43].

SO ORDERED.

DATED: August 27, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE